IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
(Roanoke Division)

| | |
|---|---|
| DAVID. J. HORN, on behalf of himself and all others similarly situated, | Civil Action No. _____ |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| NEW PEOPLES BANK, | **JURY TRIAL DEMAND** |
| Defendant. | |

COMES NOW THE PLAINTIFF, DAVID J. HORN ("Plaintiff"), on behalf of himself and Class members, who states and alleges as follows:

**INTRODUCTION**

1.  Plaintiff brings this action on behalf of himself and a Class of all similarly situated consumers against Defendant NEW PEOPLES BANK ("Defendant") arising from Defendant's routine policy and practice of charging its customers multiple Overdraft Fees for a single payment.

2.  Overdraft fees represent one of the biggest profit centers for banks, stemming from practices susceptible to high levels of abuse which pose the largest burden on consumers. For example, investigations undertaken by the Consumer Financial Protection Bureau ("CFPB") revealed that some banks intentionally create confusion for their accountholders regarding the terms of their overdraft policies, intentionally obscure how fees are charged for overdraft and insufficient funds transactions and design their accountholder application and onboarding process to allow the banks to capitalize on this confusion. This confusion allows banks to maximize the number of overdraft fees they can charge leading directly to increased revenue for the bank. *See* Ashlee Kieler, *CFPB Says TCF Bank Made Millions From Misleading Overdraft Practices*,

1

Consumerist.com (Jan. 19, 2017), https://consumerist.com/2017/01/19/cfpb-says-tcf-bank-made-millions-from-misleading-overdraft-practices/; *Consumer Financial Protection Bureau Orders Santander Bank to Pay $10 Million Fine for Illegal Overdraft Practices* (July 14, 2016), https://www.consumerfinance.gov/about-us/newsroom/consumer-financial-protection-bureau-orders-santander-bank-pay-10-million-fine-illegal-overdraft-practices/.

3. This increased revenue source, however, creates a disproportionate impact on consumers living in the lower socio-economic levels of the United States. For example, the Center for Responsible Lending reported that, "[o]verdraft fees often impose a great burden on those already living paycheck to paycheck, struggling to make ends meet." *Center for Responsible Lending, Unfair Market: The State of High-Cost Overdraft Practices in 2017* (August 2018), https://www.responsiblelending.org/sites/default/files/nodes/files/research-publication/crl-unfair-market-overdraft-l-aug2018.pdf.

4. Historically, overdraft fees represent a substantial revenue generator for financial institutions. In 2013 alone, a survey by Moebs Services, Inc. found that certain financial institutions generated $31.9 billion in overdraft revenue.[1] As banks continued their abusive practices of pushing overdraft products, "the Federal Reserve Board enacted certain regulatory changes in 2009, including requiring that bank customers must 'opt in' to bank overdraft products that may be triggered by ATM withdrawals or debit card purchases."[2] These regulations were specifically designed to protect consumers from abusive and confusing banking practices.

5. Undeterred by these new regulations, banks found new ways to keep the overdraft

---

[1] *See How Banks Sell Overdraft* 1 (July 2014) (available at http://calreinvest.org/wp-content/uploads/2018/09/Report_How_Banks_Sell_Overdraft_Results_of_Overdraft_Mystery_Shopping_in_Four_Key_States.pdf).
[2] *Id.*

machine churning: charge multiple overdraft fees for a single item without a customer's consent - all while promising in their account agreements that a single item (or transaction) would only be subject to a single overdraft fee.

6. In this case, Defendant contracted with Plaintiff to charge one Overdraft Fee for a single item that was returned one or more times for insufficient funds. *See* Account Agreement and Fee Schedule (collectively, the "Account Contract"), attached hereto as Exhibits A and B.

7. Notwithstanding these contractual provisions, which limit the number of Overdraft Fees Defendant may charge, Defendant routinely charged Plaintiff and Class members multiple Overdraft Fees for a single item. In doing so, Defendant breached its contractual promises and violated the covenant of good faith and fair dealing.

8. As a direct and proximate cause of Defendant's policies and practices, Plaintiff and Class members were injured by Defendant in an amount to be determined at trial. On behalf of himself and Class members, Plaintiff seeks damages for Defendant's violations as set forth more fully below.

## PARTIES

9. Plaintiff is a resident of the City of Grundy, County of Buchanan, Virginia, and held an account with Defendant. At the time Plaintiff opened his checking and savings accounts, he entered into Defendant's corresponding Account Contract which set forth the terms of his banking relationship with Defendant. *See* Exhibits A and B.

10. Defendant is engaged in the business of providing banking services to consumers, including Plaintiff and Class members. Defendant operates multiple branch locations in Virginia and Tennessee. Upon information and belief, Defendant's headquarters is located at 53 Commerce Drive, Honaker, Virginia 24260.

## JURISDICTION AND VENUE

11. This Court has original jurisdiction of this action under Class members Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d), this Court has original jurisdiction because the aggregate claims of the members of the putative classes exceed $5 million, exclusive of costs, and at least one of the members of the proposed classes is a citizen of a different state than Defendant.

12. Defendant regularly and systematically conducts business and provides retail banking services throughout the state of Virginia, including to Plaintiff and Class members. As such, it is subject to the jurisdiction of this Court.

13. Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in District and regularly conducts business in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

**I. DEFENDANT CHARGES ITS CUSTOMERS OVERDRAFT FEES IN EXCESS OF THOSE PROVIDED FOR IN THE ACCOUNT CONTRACT.**

   *A.   Defendant's Account Contract.*

14. Defendant requires its customers, including Plaintiff and Class members, to agree to its Account Contract at or around the time an account is opened. *See* Exhibit A.

15. Defendant's Terms and Conditions allow it to assess a single Overdraft Fee per item.

16. Defendant's Account Contract provides Defendant "may, at our discretion, honor withdrawal requests that overdraw your account" and charge a fee for overdrafts. *See* Exhibit A at 3.

17. Defendant's Fee Schedule states that Defendant may charge an "Overdraft Fee *per item*" of "$33." *See* Exhibit B at 1. (emphasis supplied).

18. Defendant's contract specifically and ubiquitously sets forth the term "item" in the singular and states a fee (singular) may be assessed "per item." Nothing in the Account Contract entitles Defendant to charge multiple Overdraft Fees on a single item. Thus, Defendant's Account Contract means it may only charge its customers one Returned Item Fee per item.

19. Notwithstanding the contract's plain language, Defendant routinely charged multiple Overdraft Fees *for the same item*.

20. Specifically, Defendant charges an Overdraft Fee when an ACH payment or check is returned for insufficient funds, and then one or more additional Overdraft Fees when *the same item* is reprocessed or "retried" without any additional action by the accountholder. However, because these "retry" payments are the same item, they should not have been subject to an additional Overdraft Item Fee.

21. Defendant breached its contract when it charged Overdraft Fees for "retried" items—thus charging more than one Overdraft Fee for a single item.

   **B.   *Plaintiff's Agreement with Defendant.***

22. At the time Plaintiff opened a checking account with Defendant, Plaintiff and Defendant entered into an agreement for Plaintiff to bank with Defendant, and Plaintiff opened a checking account with Defendant under the terms set forth in the Account Contract. *See* Exhibits A and B.

23. Defendant's Account Contract provided that Defendant could only collect one Overdraft Fee for "per item." *See* Exhibit B at 2. As such, nothing in the Fee Schedule allows Defendant to charge Plaintiff multiple Overdraft Fees for the same item.

24. Upon information and belief, Defendant entered into the same or substantially similar contract with hundreds, if not thousands, of its other banking customers.

### C. *Plaintiff's Payment Attempt, Subsequent Retries of that Payment, and Defendant's Unauthorized Overdraft Fees.*

25. In support of his claims, Plaintiff offers an example of a fee that should not have been assessed against his checking account. As alleged below, Defendant: (a) reprocessed a previously declined item; and (b) charged an additional fee upon reprocessing, for a total assessment of *$66.00 in fees on one item*. The following pattern exhibited in the following example occurred numerous times on Plaintiff's account

26. On April 7, 2017, Plaintiff wrote a check for $14.62. *See* Exhibit C at 2.

27. Defendant rejected payment of that item due to insufficient funds in Plaintiff's account and charged a $33.00 Overdraft Fee. *Id.* Plaintiff does not dispute this initial fee, as it is allowed by Defendant's Deposit Agreement.

28. Unbeknownst to Plaintiff, and without a request to Defendant to reprocess the item, eight days later, on April 21, 2017, Defendant processed the same item yet again. *Id.* Again, Defendant returned the item unpaid and charged Plaintiff *another* $33.00 Overdraft Fee for doing so. *Id.*

29. In sum, Defendant assessed Plaintiff $66.00 in fees in its effort to process a single payment.

30. Plaintiff understood the payment to be a single item as is laid out in Defendant's contract, capable at most of receiving a single Overdraft Fee.

### D. *The Imposition of Multiple Overdraft Fees for a Single Item Violates Defendant's Account Contract.*

31.     Defendant's Account Contract does not indicate that it intends to charge multiple Overdraft Fees for a single item.

32.     The plain language of Defendant's Account Contract provides that a single item is capable—at most—of incurring a *single* Overdraft Fee, even if that item is repeatedly reprocessed.

33.     Banks like Defendant that employ this abusive "multiple fee" practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their accountholders—something Defendant here never did.

34.     The following are some examples from other banks and credit unions that make clear what Defendant was contractually required to do, if it was going to engage in charging multiple Overdraft Fees for the same item or transaction:

35.     For example, First Hawaiian Bank engages in the same abusive practices as Defendant, but at least it currently discloses the practice in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENT AND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

*Terms and Conditions of FHB Online Services*, First Hawaiian Bank 40, https://www.fhb.com/en/assets/File/Home_Banking/FHB_Online/Terms_and_Conditions_of_FHB_Online_Services_RXP1.pdf (last accessed October 6, 2019) (emphasis added).

36.     Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an

item for any other reason authorized by the terms and conditions governing your Bill Payment Account. **We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.**

*Consumer and Small Business Online Access Agreement*, Klein Bank ¶ H, https://www.kleinbankonline.com/bridge/disclosures/ib/disclose.html (last accessed October 6, 2019) (emphasis added).

    37.    Central Pacific Bank, a leading bank in Hawaii, states in its Fee Schedule under the "MULTIPLE NSF FEES" subsection:

> Items and transactions (such as, for example, checks and electronic transactions/payments) returned unpaid due to insufficient/non-sufficient ("NSF") funds in your account, may be resubmitted one or more times for payment, and a $32 fee will be imposed on you each time an item and transaction resubmitted for payment is returned due to insufficient/nonsufficient funds.

*Miscellaneous Fee Schedule*, Central Pacific Bank 1 (Feb. 15, 2019), https://www.centralpacificbank.com/PDFs/Miscellaneous-Fee-Schedule.aspx (last accessed October 6, 2019).

    38.    BP Credit Union likewise states: "We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item." *Membership and Account Agreement*, BP Credit Union 4, https://www.bpfcu.org/images/docs/membership-agreement.pdf (last accessed October 6, 2020).

    39.    Regions Bank likewise states:

> If an item is presented for payment on your account at a time when there is an insufficient balance of available funds in your account to pay the item in full, you agree to pay us our charge for items drawn against insufficient or unavailable funds, whether or not we pay the item. If any item is presented again after having previously been returned unpaid by us, you agree to pay this charge for each time the item is presented for payment and the balance of available funds in your account is insufficient to pay the item.

*Deposit Agreement*, Regions Bank 18 (June 2018), https://www.regions.com/virtualdocuments/Deposit_Agreement_6_1_2018.pdf (last accessed October 6, 2020).

40. First Financial Bank states: "Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly." Special Handling/Electronic Banking Disclosures of Charges, First Financial Bank 2 (Aug. 2018), https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_Charges.pdf (last accessed October 6, 2020).

41. Consumers Credit Union states:

> Consequently, because we may charge a service fee for an NSF item each time it is presented, we may charge you more than one service fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Membership and Account Agreement*, Consumers Credit Union 5 (Sep. 4, 2020), https://www.myconsumers.org/docs/default-source/default-document-library/ccu_membership_booklet_complete.pdf (last accessed October 6, 2020).

42. Railroad & Industrial Federal Credit Union states:

> Consequently, because we may charge an NSF fee for an NSF item each time it is presented, we may charge you more than one NSF fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Terms and Conditions of your Account*, Railroad & Industrial Credit Federals Union 2 (Aug. 1, 2019) https://www.rifcu.org/Documents/Disclosures/Account-Terms-Conditions.aspx (last access October 6, 2020).

43. Partners 1st Federal Credit Union states:

> Consequently, because we may charge a fee for an NSF item each time it is presented, we may charge you more than one fee for any given item. Therefore, multiple fees may be charged to you as a result of a returned item and resubmission regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the item.

*Consumer Membership & Account Agreement*, Partners 1st Federal Credit Union 11 (Sep. 15, 2019) https://www.partners1stcu.org/uploads/page/Consumer_Account_Agreement.pdf (last accessed October 6, 2020).

44. Members First Credit Union states:

> We reserve the right to charge a Non-Sufficient Funds Fee (NSF Fee) each time a transaction is presented if your account does not have sufficient funds to cover the transaction at the time of presentment and we decline the transaction for that reason. **This means that a transaction may incur more than one Non-Sufficient Funds Fee (NSF Fee) if it is presented more than once** . . . we reserve the right to charge a Non-Sufficient Funds (NSF Fee) for both the original presentment and the representment [.]

*Membership and Account Agreement*, Members First Credit Union of Florida 3, http://www.membersfirstfl.org/files/mfcufl/1/file/Membership_and_Account_Agreement.pdf (last accessed October 6, 2020).

45. Community Bank, N.A. states:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. You may be charged more than one Overdraft or NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.

*Overdraft and Unavailable Funds Practices Disclosures*, Community Bank, N./A. 5 (Nov. 2019) https://cbna.com/u/header/2019-Overdraft-and-Unavailable-Funds-Practices-Disclosure.pdf (last accessed October 6, 2020).

46.     RBC Bank states:

We may also charge against the Account an NSF fee for each item returned or rejected, including for multiple returns or rejections of the same item.

*Service Agreement for Personal Account*, RBC Bank 13 (Sep. 2014) https://www.rbcbank.com/siteassets/Uploads/pdfs/Service-Agreement-for-Personal-Accounts.pdf (last accessed October 6, 2020).

47.     Diamond Lakes Credit Union states:

Your account may be subject to a fee for each item regardless of whether we pay or return the item. We may charge a fee each time an item is submitted or resubmitted for payment; therefore, you may be assessed more than one fee as a result of a returned item and resubmission(s) of the returned item.

*Membership and Account Agreement*, https://www.diamondlakesfcu.org/termsconditions.html (last accessed October 6, 2020).

48.     Parkside Credit Union states:

If the Credit Union returns the item, you will be assessed an NSF Fee. Note that the Credit Union has no control over how many times an intended payee may resubmit the same check or other item to us for payment. In the event the same check or other item is presented for payment on more than one occasion, your account will be subject to an additional charge on each occasion that the item is presented for payment. There is no limit to the total fees the Credit Union may charge you for overdrawing your account.

*Membership and Account Agreement*, Parkside Credit Union 21 https://www.parksidecu.org/_/kcms-doc/1043/44277/Membership-and-Account-Agreement.pdf (last accessed October 6, 2020).

49.     In fact, Courts throughout the Country routinely conclude that banks using contracts nearly identical to that utilized by Defendant here *breach their contracts* when they charge multiple Overdraft Fees on the same item. *See, e.g., Roberts v. Capital One, N.A.*, 719 Fed. Appx. 33 (2d Cir. 2017); *Morris v. Bank of America, N.A.*, No. 3:18-cv-00157, 2009 WL 1421166 (W.D.N.C. Mar. 29, 2019); *Tisdale v. Wilson Bank and Trust*, No. 19-400-BC (Davidson Co. Tenn.

11

Chancery Court Oct. 17, 2019); *Tannehill v. Simmons Bank*, No. 3:19-cv-140-DPM (E.D. Ark. Oct. 21, 2019); *Perks, et al. v. TD Bank, N.A.*, No. 18-CV-11176 (S.D.N.Y. Mar. 17, 2020); *Ingram v. Teachers Credit Union*, No. 49D01-1908-PL-035431 (Ind. Comm. Ct. Feb. 18, 2020); *Noe v. City Nat'l Bank of W. Va.*, No. 3:19-cv-0690 (S.D. W. Va. Feb. 19, 2020); *Almon, et al. v. Independence Bank*, No. 19-CI-00817 (McCracken Co. Ky. Cir. Ct. Mar. 18, 2020).

50. At no time did Defendant provide any disclosure to Plaintiff and Class members or amend the contract to reflect that it intended to charge multiple Overdraft Fees on the same item. In agreeing to charge Plaintiff and Class members one set of fees, and instead charging Plaintiff and Class members multiple fees for a single item, Defendant breached its contract with Plaintiff and Class members.

### E. The Abusive Practice Alleged Herein Breach Defendant's Duty of Good Faith and Fair Dealing.

51. A party to a contract, who possesses unilateral discretion over the implementation of a term in a contract is required to act in good faith when it acts to implement that term. In such circumstances, the party with the discretionary power is required to exercise that power and discretion in good faith and may not do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract. As a result, Defendant was prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Defendant had, and has, a duty to honor transaction requests in a way that is fair to its accountholders and is prohibited from exercising its discretion to gouge them with fees never disclosed or contemplated by its Account Contract.

52. Here, Defendant provided itself numerous discretionary powers directly affecting its accountholders; namely, the power to define an undefined term - "item" - in a manner that unfairly benefits it. Defendant—in its *sole discretion*, and in violation of its contract with Plaintiff

and Class members—decided it would charge Plaintiff and Class members a second (or more) Overdraft Fee on the same item. At all times relevant hereto, Defendant did not exercise its discretion in good faith, opting instead to use the multiple retry attempts in its own favor thereby prejudicing Plaintiff and Class members. Specifically, Defendant charged more than one Overdraft Fee for the same item *solely for Defendant's benefit.* In short, Defendant abused the power it has over its customers and their bank accounts by charging multiple Overdraft Fees for the same item. In doing so, Defendant breached the implied covenant of good faith and fair dealing inherent in each and every contract that required it to act with good faith towards Plaintiff and Class members.

53. Utilizing this power, Defendant exercised its discretion in its own favor - and to the prejudice of Plaintiff and Class members - by charging Plaintiff and Class members multiple Overdraft Fees every time the same item was resubmitted to the bank for payment against a negative balance. Defendant's decision to unilaterally enforce this policy and practice directly lead to Plaintiff and Class members being charged multiple Overdraft Fees on the same item. As a direct and proximate result, Defendant breached the implied covenant of good faith and fair dealing.

## CLASS ACTION ALLEGATIONS

54. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a Class of individuals defined as:

> *All persons who, within the applicable statute of limitations period, were charged multiple Overdraft Fees by New Peoples Bank for a single item.*

55. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclasses if necessary, before this Court determines whether class certification is appropriate.

56. Excluded from Class members is: (1) any entity in which Defendant has a controlling interest; (2) officers or directors of Defendant; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and Class members.

57. This action is brought and may be properly maintained on behalf of each member of the Class pursuant to Fed. R. Civ. P. 23.

58. *Numerosity of the Class:* The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of Class members is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes that Class members is likely to include thousands of members based on the fact that Defendant has over $700 million in assets.

59. Defendant has a database, or other documentation, of its customers' transactions and account enrollment documents. These databases or documents can be analyzed by an expert to ascertain which of Defendant's customers have been harmed by its practices and thus qualify as Class members. Further, Class members definitions identify unnamed Plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself as having a right to recover damages from Defendant. Other than by direct notice by mail or email, alternatively proper and sufficient notice of this action may be provided to Class members through notice published in newspapers or other publications.

60. *Commonality:* This action involves common questions of law and fact. The questions of law and fact common to both Plaintiff and Class members include, but are not limited to, the following:

    a.    Whether Defendant violated its contractual relationship with Plaintiff and Class members by charging multiple Overdraft Fees for a single item;

14

    b.    Whether Defendant breached its covenant of good faith and fair dealing with Plaintiff and Class members by charging multiple Overdraft Fees for a single item;

    c.    Whether the Account Contract's plain language limited the number of times Defendant could charge Plaintiff and Class members Overdraft Fees on the same item.

    d.    If the Contract's terms and conditions were not plain, whether they were so ambiguous that Plaintiff's and Class members' reasonable interpretation of the Contract should be interpreted to limit the number of times it could charge Plaintiff and Class members Overdraft Fees;

    e.    The proper method or methods to determine and measure Plaintiff's and Class members' damages;

    f.    The declaratory or injunction relief to which Plaintiff and Class members are entitled to.

61.    *Typicality:* Plaintiff's claims are typical of all members of the Class. The evidence and the legal theories regarding Defendant's alleged wrongful conduct committed against Plaintiff and Class members are substantially the same because all of the relevant agreements between Defendant and its accountholders were identical as to all relevant terms, and also because the challenged practices of charging customers multiple Overdraft Fees for a single item are uniform for Plaintiff and Class members. Accordingly, in pursuing his own self-interest in litigating his claims, Plaintiff will also serve the interests of the Class.

62.    *Adequacy:* Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiff and Class members that would make class certification inappropriate. Additionally, Plaintiff's Counsel are competent to advance the interests of the Class having been designated as Lead Counsel in

dozens, if not hundreds, of Class cases. Plaintiff and his Counsel intend to prosecute this action vigorously.

63. *Predominance and Superiority:* The matter is properly maintained as a class action because the common questions of law and fact identified herein, and to be identified through discovery, predominate over questions that may affect only individual Class members. Further, a class action is superior to all other available methods for the fair and efficient adjudication of this matter because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and Class members to individually seek redress for Defendant's wrongful conduct. Even if any individual person or group(s) of Class members could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Class members action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing Class members and would lead to repetitious trials of the numerous common questions of law and fact. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this action. Absent a class action, Plaintiff and Class members will continue to suffer losses, thereby allowing Defendant's violations of law to proceed without remedy and allowing Defendant to retain the proceeds of their ill-gotten gains.

64. Plaintiff anticipates the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. Upon information and belief, Defendant's own business records or electronic media can be utilized for the notice process. To the extent any further notices may be required, Plaintiff anticipates the use of additional media or mailings.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT, INCLUDING BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Plaintiff and Class members)

65. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

66. Plaintiff and Defendant contracted for checking account services, as embodied in Defendant's Account Contract. *See generally* Exhibits A and B.

67. Defendant's contract with Plaintiff and Class members specified Defendant could charge *one* Overdraft Fee "per item." *See* Exhibit B.

68. In actuality, Defendant charged Plaintiff and Class members multiple Overdraft Fees for the same item.

69. Furthermore, the covenant of good faith and fair dealing constrains Defendant's discretion to abuse self-granted contractual powers.

70. This good faith requirement extends to the manner in which a party employs discretion conferred by a contract.

71. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit - not merely the letter - of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and

abusing the power to specify terms constitute examples of bad faith in the performance of contracts. This is particularly true where one party (here, Defendant) maintains sole discretion over the decision to implement a particular term or condition of the contract - in this case the decision to charge multiple Overdraft Fees for a single item.

72. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes the conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Other examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

73. Defendant breached the covenant of good faith and fair dealing through its policies and practices as explained herein; namely, its unilateral decision to charge Plaintiff and Class members multiple Overdraft Fees on the same item.

74. Each of Defendant's actions were done in bad faith and were arbitrary and capricious.

75. Defendant breached its contract with Plaintiff and Class members through its policies and practices as alleged herein.

76. Plaintiff and Class members sustained monetary damages as a result of each of Defendant's breaches in an amount to be determined at trial.

77. Plaintiff and Class members seek monetary damages in the amount of fees paid by Plaintiff and Class members to Defendant in excess of those provided by the contract in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

- A. Certifying the proposed Class, appointing the Plaintiff as representative of the Class, and appointing counsel for Plaintiff as Lead Counsel for Class members;

- B. Finding that Defendant breached its contract with Plaintiff and Class members;

- C. Awarding damages in an amount according to proof;

- D. Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

- E. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses pursuant to applicable law and any other basis; and

- H. Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: December 21, 2020                                      Respectfully submitted


BY: /s/ *Derrick L. Walker*
    Derrick L. Walker (VSB No. 46490)
    Allen, Allen, Allen and Allen
    1809 Staples Mill Road
    Richmond, VA 23230
    (804) 257-7514 (phone)
    (866) 280-5565 (fax)
    derrick.walker@allenandallen.com

/s/ *Jacob R. Rusch*
Timothy J. Becker (MN Bar No. 0256663)
Jacob Rusch (MN Bar No. 0391892)
**JOHNSON BECKER PLLC**
444 Cedar Street, Suite 1800
St. Paul, MN 55101
(612) 436-1804 (phone)
(612) 436-4801 (fax)
tbecker@johnsonbecker.com
jrusch@johnsonbecker.com
To be admitted by Pro Hac Vice
*Attorneys for Plaintiff*